Chancellor fVaties.
The complainant claims as the Widow of Aromanus Lyles, who died intestate, a distributive share of his estate, and prays for a writ of partition:
The defendants opposed her claim on several grounds; 1st, that at the time of the complainant’s marriage with their father, A. Lyles, she was the'lawful wife of a person by the name of Philip James, who was then living; 2dly, that she had by a marriage contract with their father, precluded herself from any share in his estate, in consideration of his relinquishing all claim to the separate estate, of which she was possessed; and 3d, that their father had many years before his marriage with her, divided the whole of his real estate among his sons, James, Aromanus and Thomas Lyles, and put them in possession of their-respectiye shares,
The first objection to the claim of the complainant must *290 depend on the truth of the fact on which it rests, and after ft careful and repeated consideration of the testimony produced on both sides, my mind has been filled with so much doubt by the contradictions of the witnesses, of whose credibility I cannot judge without knowing their character, that I find it impossible to determine satisfactorily on which side the truth is. 1 feel bound therefore, in justice to the parties, to refer this fact to the trial of á jury, whose personal acquaintance with the witnesses may enable them to form a more correct judgment upon it.
1 have no difficulty as to the second objection to the complainant’s claim. The written instrument which has been relied oh as the evidence of a mutual agreement between her and A. Lyles to renounce all claim to each others estates, was signed by him alone, and she cannot be bound by it. He must himself have considered it of no effect, as it appears that a short time before he died, he said to one of the witnesses, that his wife would be entitled at his death to a third part of the plantation and negroes, which he had reserved for himself after providing for his children. It appears also that the defendants did not regard this instrument as a marriage contract, for they endeavored to establish it as a testamentary paper; but the court of law determined that this character did not belong to it.
. The counsel for the defendants now contend that it may be construed a covenant to stand seized to' uses; that is, á covenant of Aromanus .Lyles, to hold his estate for the exclusive use of his children, the defendants. There is no ground- for this construction; the paper purports to he a mutual agreement between the parties, for a mutual purpose which cannot be carried into effect for such purpose, because both parties have not executed it. Such a paper cannot after-wards be converted into theind ependent covenant of one party* and be operative foí a different purpose".
The third ground insisted on'by the defendants has I think been fully supported, as far as it respects the claims of James and Aromanus Lyles to their shares of the real estate given to them by their father. Although the gifts were only verbal, yet the quantity of land given to each was surveyed and ascertained *291 by marked lines, each of them was put into the possession of his share, and made considerable clearings and improvements. The possession of James had continued for nine or ten years before the death of his father, and that of Aromanus for thirteen or fourteen years, daring which time their rights were constantly recognized by him as absolute. Such a possession would give them perfect titles under the act of limitations^ and should have a peculiar claim to its protection, as it has been obtained with the express consent of their father, and not by a mere construct five acquiescence. The claim of Thomas Lyles to his share of the real estate has not the same unequivocal support. It appears that his father (although certainly intending it for him) continued to hold the possession of it until his death, and it must have been the same laud to which he alluded, when,he ¿aid that his wife would be entitled to a third part of it; for he had given all the rest of his real estate to his other sons. The claim then of Thomas Lyles cannot be allowed, because the gift £o him has not been executed.
It is therefore ordered and decreed, that -an issue be made between the parties to try the fact, whether Philip James the former husband of the complainant was living at the timeofher marriage with Aromanus Lyles, and that (he bill be retained «ntil the verdict on such issue he found and certified. It is further ordered, that the defendants be enjoined from setting up (he written instrument, purporting to be a marriage contract between A. Lyles and the complainant against her claim to a distributive share of his estate, if the verdict on the said issue shall find that she was the lawful wife of the said A. Lyles; and in that event it is also ordered, that the complainant be perpetually .enjoined from prosecuting her claim to a share of such parts of the real estate of the said A. Lyles, as were given by him' to his sons, James and Aromanus Lyles. The costs to await the final decree in the cause.
The defendants appealed and moved to reverse the decree, on the grounds.
1st. Because effect ought to have been given to the deed or written instrument, the execution of which was fully proved and not contested:
*292 2nd. That the written instrument, relied on by defendants ¡Bight well be construed a covenant to stand seized to uses, and ought to have been so construed:
3d, That the claim of Thomas Lyles to one third of the land was well sustained, and ought to have been allowed. The gift was complete and executed as far as the nature of it would permit.
Desaussure for, the motion. The questions are whether ^hc written instrument was intended by the deceased to operate, and whether the law will permit it to have effect?
It is sufficient evidence of his intending it to operate, that it was found duly executed, in the possession of one of the par* ties intended to be benefited by it. The parol testimony confirms the presumption of its having been solemnly executed* He offered the paper to his intended wife to sign; but she refused. But he had a right to dispose of his property without her concurrence; and though he may have thought otherwise, his misconception of his rights will not alter the effect of his act'.
The intention that she should have no part of his estate' after his death, but that the whole should go to his children, is clearly expressed; and it is a rule of law applicable to deeds and other instruments as well as to wills, that the intention of parties, so expressed, shall have effect, unless there be something in the law to forbid it. This may be construed a cove»pant to stand seized to uses. The objection to the paper is technical; but technical objections shall not defeat the legal intentions of parties. Any words which sufficiently explain the intention, with a good consideration, will be sufficient to raise & use. (Cowp, 600; Shep. Touchs. 82; 2 Wils. 75; 5 T. R. 129; 2 Fonb. 44, 47; 4 Eq. Rep. 521 Milledge, vs. Lamar.)
A secret conveyance by a woman, of all her property, c© the eve of marriage, would be void as a fraud on the marital ¿rights; yet she may make provision for her children by a former marriage. It has never been questioned that a man under the same circumstances may convey property. The wife, by mar® friage, acquires no rights in the husband’s property. After the marriage he may convey away his whole personal estate, and his Whole real estate, subject only to the claim of dower, which *293 '53 a mere contingency and not regarded as a vested right. (4 Eq. Rep. 139, referring to 2 Eq. Rep. 79, Hamilton, vs. Pearce.)
As to the claim of the defendant, Thorny, under the gift from his father, cited Lessee of Tyler, vs. Peter and Frederic Eckhardt, 1 Bin. 378.
Chancellor Bcsaussura.
In this case the complainant claimed as the widow of Aromanus Lyles, a distributive share of his estate, and prayed a writ of partition. Her claim was opposed On these grounds, one of which only is necessary to be discussed, as I concur with the decree on the others.
This ground of objection was, that there was an instrument of Writing, signed by Aromanus Lyles, executed before the marriage, which renounced all rights in the estate of the intended wife and preclude her from any share of his estate. ' The circuit judge states that on. the original argument before himf the objection was put on the ground that the woman whom Aromanus Lyles intended to marry, had by a marriage contract with' him, precluded herself from any share of his estate^ In consideration of his relinquishing all claim to the separate estate of which she was possessed; and he decided that the instrument signed by A. Lyles alone, could not be binding on heiy, as an act of hers, and in this I do concur with the circuit judge.
It was also contended for the defendants, that the instrument executed before the solemnization of the marriage by Aromanus Lyles, was such an instrument as could be supported as a covenant, to hold his estate for the exclusive use of his children the defendants. But the circuit judge was of opinio® that there was no ground for this construction, as the paper pim-porting to be a mutual agreement between the parties, for a mutual purpose, which cannot be carried into effect for such purpose, because both parties have not executed it.
I have revolved this point a good deal in my mind, and have had considerable difficulty in forming an opinion. The instrument is executed by Aromanus Lyles on the 6th of February 1817. It is in substance as follows: — <c Whereas J. Aromanus Lyles, senior, do intend to intermarry with *294 Susannah Fennel], or otherwise Susannah Fannell, of Les'' uigton district, having a desire that my children' by a former marriage, should after my décease inherit my whole estate both rteal and personal, clear of any incumbrance by my intended marriage with the above mentioned Susannah Fennell, I hereby bar her the said Susannah of any claini to any part of my estate, both real and personal, and I the said Aromanus Lyles do hereby renounce and bar myself and my heirs of any claim, right or title I may acquire to the estate of the said Susannah, be the same real or personal, by intermarriage with her the said Si;» sannah; reserving to myself and my intended wife Susanna!;., during my life, a joint support out of the two estates; and at the death of either myself or Susannah above mentioned, the interest hereby" intended to be secured in each others estates to be severed, and the estate of the deceased to be freely possessed and enjoyed by the heirs of the said deceased, without the interference or control of the survivor, witness my hand arid seal, the 6th February 1817,” On examining this instrument carefully, I do not perceive any intention that it should be a deed executed by both parties. It professes to be an instrument by Aromanus Lyles alone. The principal question which ariscy is,, can a man about to marry convey his property in such u manner that his intended wife shall not be entitled to have any interest therein on the marriage taking place. It is settled laws that if a woman be about to marry, and in contemplation of that marriage, executes deeds conveying away her estate, and so as to prevent the marital rights attaching, such a deed is considered as a fraud on the marital rights and is void, except in the case of the deed being in favor of children by a former marriage. Bui this has never been considered as applicable to a man pursuing the same course. It may be unequal and therefore unjust, but still it is the law'. And indeed the case we ai;e considering has the excuse, which would give validity to such a deed by the wife, to wit: The provision for children by a former marriage. If the instrument therefore really conveys the husbands estate in such a manner that the wife cannot have an interest therein, I do not perceive that there is any legal objection to this act .of *295 the husband. The only question there is, does the deed in question convey away the property of the husband-, in sach a manner as to he effectual for the benefit of the children and take away the rights of the wifei Of this there is reason to be doubtful. it is a most imperfect instrument. It is not a deed making any conveyance of the property, directly or indirectly, tp the children, but it does distinctly state that his property is to go to his children, clear of the claims of his wife. . .The expression- of this intention, however imperfect in the wording, seems to -¡as to be clear, and I think upon the whole it is conclusive as to any right except that of dower in the laild, which would remain, because the legal estate'is not conveyed out of the .testator; so that if she should be proved on the trial of the issue at law,, on the question of marriage, to have been the lawful wife of Lyles, she would be entitled to that. Upon the whole therefore,.! cannot concur With the decree on this part of the case.. .
Ordered and adjudged that the decree of the circuit.court be affirmed.
Chancellors Waties, Gaillard and James, concurred- ,